

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 21, 2016

**BY ECF**

The Honorable Ronald L. Ellis
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States* v. *Randy Heard*, 16 Cr. 24 (RLE)

Dear Judge Ellis:

      The Government respectfully submits this letter in advance of sentencing in this matter, currently scheduled for May 2, 2016 at 11:00 a.m. As set forth in the plea agreement, the parties have stipulated to a Guidelines sentence of 12 months' imprisonment (the "Stipulated Guidelines Sentence"). For the reasons explained below, the Government submits that a sentence below the Stipulated Guidelines Sentence is appropriate. Specifically, the Government recommends a prison sentence of time served followed by one year of supervised release, the terms of which should include a full mental health and psychiatric assessment and participation in an appropriate outpatient mental health treatment program. The Government also seeks a restraining order, barring the defendant from having any contact with the victim referenced in Count One of the Misdemeanor Information. The Government submits that such a disposition would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**A. Factual Background**

      As set forth in the Criminal Complaint filed in this matter, on or about October 10, 2013, Randy Heard, the defendant, appeared at the offices of the Social Security Administration ("SSA") located in the vicinity of 1111 Myrtle Avenue, Brooklyn, New York (the "Myrtle Avenue Building"). (Complaint ¶ 4(a)). While inside the Myrtle Avenue Building, Heard became agitated and warned that SSA personnel should call the police because he was "going to go bananas." Heard also threatened an SSA employee that he would wait for her outside of the Myrtle Avenue Building and "smash her face when she gets outside." (*Id.* ¶ 4(b)). As a result, Heard was mailed a letter barring him from personally reporting to any SSA office on his own initiative (the "Ban Letter"). The Ban Letter instructed Heard to conduct any SSA-related business by phone, and to only personally report to SSA offices when instructed by SSA. (*Id.* ¶ 4(c)).

Nevertheless, on or about May 29, 2015, at about 4:00pm, Heard violated the Ban Letter by entering an SSA building at 123 William Street, New York, NY (the "Building"). At the time, Victim-1 (as identified in the Complaint) was working as an SSA district manager in the Building, and was alerted to Heard's presence. Meanwhile, other SSA staff contacted the New York City Police Department ("NYPD") and the Federal Protective Services ("FPS"). Before FPS inspectors arrived, Heard stated, in substance, to Victim-1, "I'm going to kill a cop tonight . . . I am going to kill some of you people." After FPS inspectors arrived, Victim-1 provided Heard with an additional copy of the Ban Letter and reminded Heard of its restrictions. FPS inspectors then escorted Heard outside of the Building. (Complaint ¶ 5(a-b). About an hour and a half later, Heard was still waiting near the Building, when Victim-1 left work for the day and descended the stairs of a nearby subway station (the "Station"). While entering the Station, Heard jumped out of a wheelchair and followed Victim-1 down the stairs while repeatedly threatening to kill him. Heard also spat, several times, on Victim-1's face and clothing. (*Id*. ¶ 6(a-b)).

Once again, on June 12, 2015, Heard returned to SSA's offices within the Building, where he was detained by law enforcement officers ("LEOs") for trespassing, and escorted into an interview room. While in the interview room, one of the LEOs ("LEO-1") advised Heard that he had trespassed on the property by violating the Ban Letter. (Complaint ¶ 8 (a-b). Heard handed LEO-1 various documents, yet shortly thereafter lunged toward LEO-1, snatching one of the documents and striking LEO-1's hand. Several LEOs attempted to place Heard under arrest, whereupon Heard resisted by swinging his arms and locking his arms under his body. Heard also spontaneously stated, in substance, "I should've killed him. This is all because I spit on him." (*Id*. ¶ 8(c)). Following his arrest, Heard made several spontaneous statements, including, "I would have stabbed him," "I'd rather go to jail for a stabbing than live in the train station," and I'm going to have to stab that man." (*Id*. ¶ 8(d)(i)). Also, in reference to other SSA employees, Heard stated in part and substance: "Let them know they're gonna die when they get out of this building"; "I'm going to stab them in the throat, any one of them now"; and "I'm stabbing them today, any one of them that come out of this office. I'm going downstairs to get a knife." (*Id*. ¶ 8(d)(ii)).

Heard was subsequently charged by Misdemeanor Information with two counts of assaulting, resisting, or impeding certain officers or employees, in violation of Title 18 United States Code, Sections 111(1)(1) and 2. Each offense carries a maximum term of imprisonment of one year, a maximum term of supervised release of one year, a maximum fine of $100,000, and a $25 mandatory special assessment.

On March 28, 2016, the defendant appeared before the Court and pleaded guilty, pursuant to a Plea Agreement, to Count One of the Information, relating to the assault of Victim-1.

**B.  Stipulated Guidelines Range**

The Plea Agreement between the defendant and the Government sets forth a stipulated guidelines range. Specifically, the parties agree that, pursuant to U.S.S.G. § 2A2.4(a), the base offense level is 10. The parties further agree that a three-level increase is warranted

pursuant to U.S.S.G. § 2A2.4(b)(1)(A) because the offense involved physical contact. The parties also agree that a two-level reduction is warranted pursuant to U.S.S.G. §3E1.1(a) based on the defendant's acceptance of responsibility.  Therefore, the parties conclude that the appropriate Offense Level is 11.

As stipulated in the Plea Agreement, the parties agree that the defendant has twelve criminal history points and is therefore in Criminal History Category V.  Based on an Offense Level of 11, the Guidelines sentencing range for the defendant would therefore be 24 to 30 months' imprisonment.  However, because the offense alleged in County One carries a maximum sentence of 12 months' imprisonment, the defendant's Stipulated Guidelines Sentence is 12 months' imprisonment.

## C. Discussion

### 1. Applicable Law

The Guidelines still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  *Booker*, 543 U.S. at 264.  As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark."  *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7).  *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)    to afford adequate deterrence to criminal conduct;
    (C)    to protect the public from further crimes of the defendant; and
    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### 2. A Sentence of Time Served Is Warranted in this Case

In balancing the defendant's criminal conduct, criminal history, and ongoing mental health problems, it is the Government's position that the defendant, society and the interests of justice are best served with a sentence requiring the defendant to seek the mental health treatment he requires. Given the lack of physical injury in this case, the Government believes that the approximately six weeks' of imprisonment already served by the defendant adequately balances the various considerations under § 3553(a) and achieves the statute's stated objectives. However, the Government also believes that if Heard does not receive the help he so badly needs, it is only a matter of time until he is back before the criminal justice system. And the Government fears that the victim of the next incident may not be quite as lucky as Victim-1.

The defendant's conduct, over the course of several months and inside of multiple SSA offices, is both alarming and concerning. More than once, Heard threatened death or bodily harm to both SSA workers and LEOs, including Victim-1, who was threatened in his workplace and stalked on his way home. On two occasions – both when he spat on Victim-1 and when he resisted arrest – Heard's aggression became physical. While the Government acknowledges the absence of physical injury, it cannot be argued that Heard posed no real threat, especially in light of an over twenty-year-long criminal history that includes multiple acts of assault, weapons possession, menacing and harassment, not to mention larcenies and both felony and misdemeanor narcotics possession.

On the other hand, the defendant clearly struggles with mental illness. The facts of the complaint alone reveal an individual who is deeply troubled. And the accounts of those who have dealt with Mr. Heard directly – from SSA workers, to state and federal corrections officers and members of the U.S. Marshals Service – only verify this.

For these reasons, the Government believes that any appropriate sentence must include a requirement that Heard receive treatment for his mental illness, with compliance to be monitored by the United States Department of Probation ("Probation") during a one-year term of supervised release. The Government has already contacted Probation, which has advised that, if the Court imposes a term of supervised release, it would recommend several special conditions:

First, regarding his mental health issues, the defendant shall undergo a full mental health and psychiatric assessment, and if deemed necessary, participate in an outpatient mental health treatment program approved by Probation. The defendant shall continue to take any prescribed medications unless otherwise instructed by the health care provider. The defendant shall contribute to the cost of services rendered based on the defendant's ability to pay and the availability of third-party payments. Probation also asks that the Court authorize the release of available psychological and psychiatric evaluations and reports to the health care provider.

Second, in the event that the defendant is homeless, Probation asks that the Court order the defendant to reside in a Residential Re-Entry Center for a period of up to 180 days, during which time the offender shall not be permitted to leave the facility except for work, religious observance or other acceptable reasons as approved by Probation. The defendant shall abide by all the rules and regulations of the Residential Re-Entry Center, which shall include a

subsistence payment to the facility based upon income earned. Should suitable housing as approved by the Probation Department be secured prior to the completion of the 180 days, this condition may be satisfied prior to reaching the full term.

Third, given Heard's history of drug possession, Probation also recommends that the defendant be required to participate in an outpatient treatment program approved by Probation, which may include testing to determine whether the defendant has reverted to using drugs or alcohol. The defendant shall contribute to the cost of services rendered based on his ability to pay and the availability of third-party payments. Probation asks that the Court authorize the release of available drug treatment evaluations and reports to the substance abuse treatment provider.

Finally, the Government requests that any sentence include a restraining order preventing the defendant from having any further contact with Victim-1. This should include a specific order that bars Heard from entering the Building, where Victim-1 still works.

**D. Conclusion**

For the reasons set forth above, the Government respectfully recommends that the Court impose a sentence on the defendant of time served followed by one year of supervised release, with the terms of supervised release to include a mental health treatment component ordered and monitored by probation, and a restraining order barring the defendant from entering the Building or having any contact, whatsoever, with Victim-1. Such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____
Jonathan E. Rebold
Assistant United States Attorney
(212) 637-2512

cc: Christopher Flood, Esq. (via ECF)